IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:26-CV-11-FL-BM

| | | |
|---|---|---|
| RONALD SATISH EMRIT, PRESIDENTIAL CANDIDATE NUMBER P60005535, et al.,<br><br>Plaintiff,<br><br>v.<br><br>MARIA CHERNIAVSKA, et al.,<br><br>Defendants. | ) | **ORDER and MEMORANDUM AND RECOMMENDATION** |

This *pro se* case is before the court on the motion by plaintiff Ronald Satish Emrit, Presidential Candidate Number P60005535 ("plaintiff") and Presidential Committee/Political Action Committee/ Separate Segregated Fund (SSF) Number C00569897 to proceed *in forma pauperis* [DE-3] pursuant to 28 U.S.C. § 1915(a)(1), and for a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). Also before the court is plaintiff's (i) motion to serve process [DE-10], (ii) motion to supplement record with additional information [DE-13], and (iii) motion to transfer case to international court [DE-15].

The motions were referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). The court finds that plaintiff has demonstrated appropriate evidence of his inability to pay the required court costs, and the application to proceed *in forma pauperis* [DE-3] will be ALLOWED. Based on the court's frivolity review and for the reasons stated below, however, the undersigned RECOMMENDS that plaintiff's complaint [DE-1] be DISMISSED WITHOUT PREJUDICE.

In addition, the undersigned DENIES plaintiff's non-dispositive motions pending before the court [DE-10; DE-13; DE-15] as frivolous and without merit, and for the reasons stated below.[1]

**ORDER ON *IN FORMA PAUPERIS* MOTION [DE-3]**

To qualify for *in forma pauperis* status, a person must show that he "cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself and dependents with the necessities of life." *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (internal quotation marks omitted). Based on the information in the motion to proceed *in forma pauperis* [DE-3], the court finds that plaintiff has adequately demonstrated his inability to prepay the required court costs. Accordingly, plaintiff's motion to proceed *in forma pauperis* [DE-3] is therefore ALLOWED.

**MEMORANDUM AND RECOMMENDATION ON FRIVOLITY REVIEW**

**I. BACKGROUND**

**A. Plaintiff's allegations and legal claims**

Even under the generous standard accorded the filings of *pro se* litigants, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the substance of plaintiff's complaint is immensely difficult to discern. Plaintiff's sixteen-page complaint [DE-1] consists largely of a combination of stream of consciousness (*id.* at 3 ("That name 'Big Ben' is also the name of a famous clock in England which reminds the plaintiff of the song 'Clocks' by the British band Coldplay")); conspiracy theories ("Regarding the paranormal and the esoteric ~ the plaintiff believes that the Bowie Town Center in Bowie, Maryland is connected to Sawgrass Mills (SM) Mall in Sunrise, Florida and Yang-Mills Theory involving gauge symmetry, gauge bosons, and Spontaneous Symmetry Breaking");

[1] Absent such ruling, however, the undersigned would still have recommended these non-dispositive motions be denied as moot, consistent with the recommendation that plaintiff's complaint be dismissed.

musings on films (*id.* at 5 ("The Mothman Prophecies was based off of a mass hallucination or mass hysteria in Point Pleasant, West Virginia")); word and letter associations (*id.* at 5 ("The plaintiff also noticed that his neighbor and nephew Chris Brooks (CB) has the same initials as Chesapeake Bay (CB), Chess Board (CB), and Chicas Bonitas (CB) club in North Las Vegas right next to Palomino."); fanciful theories on physics (*id.* at 8 ("With regards to the paranormal ideas applied to physics, the plaintiff believes that GPS satellites are connected to the word GYPSY referring to the Romani People (RP) from India who are known for being nomadic, homeless people that are fortune tellers and psychics now in Eastern European countries"); and internet links (*see, e.g.*, *id.* at 4 ("https://music.apple.com/us/music-video/soul-mate/1453048025")).

Plaintiff purports to assert claims against "Maria Cherniavska of Warsaw, Poland (Future First Lady of United States by 2028 in a Parallel Universe)" ("Maria Cherniavska"); "Volodymyr Zelenskyy (President of Ukraine)" ("President Zelenskyy"); "Estate of Alexei Navalny"; "Darya Ignateva of Kyiv, Ukraine"; "Kateryna Olokoba of Kherson, Ukraine" ("Kateryna Olokoba"); "Erin Burnett Outfront of Cable News Network (CNN)" ("Erin Burnett"); the "International Court of Justice of Hague, Netherlands" (the "ICJ"); the "United Nations ('UN')"; the "World Bank"; the "International Money Fund ('IMF')" and the "Council on Foreign Relations" (the "CFR") (*see id.* at 9-10).

With respect to these individuals, plaintiff alleges that he met "Maria Cherniavska on a website licensed according to International Marriage Broker Regulation Act (IMBRA)" and then began communicating with her on WhatsApp in 2019. *Id.* at 11. Plaintiff claims that in 2022 and possibly previous to that year, he wired money totaling at least 300 Euros to Maria Cherniavska through one or more financial transfer companies. *Id.* at 12.

Plaintiff also explains that he communicated with Kateryna Olokoba "in 2019 and 2020

from one of these networks (Russian Cupid or Ukraine Date) and also communicated with Darya Ignateva of Kyiv, Ukraine from a different website d/b/a Amour Feel." *Id.* at 11.

Plaintiff purports to bring three counts in his complaint: (i) defamation (libel and slander) against Erin Burnett because she "has defamed both Presidents William Jefferson Clinton [("former President Clinton")] and Donald J. Trump [("President Trump")] by insinuating that the both of them are on a client list provided by either Jeffrey Epstein or his accomplice Ghislain Maxwell"; (ii) invasion of privacy through false light against Erin Burnett because the "has committed the tort of the invasion of privacy through false light by insinuating that both Presidents William Jefferson Clinton and Donald J. Trump are on the client list provided by either Jeffrey Epstein or Ghislain Maxwell; and (iii) intentional infliction of emotional distress ("IIED") against Erin Burnett based on "extreme and outrageous conduct by insinuating that both Presidents William Jefferson Clinton and Donald J. Trump are on this client list provided by either Jeffrey Epstein o[r] Ghislain Maxwell" and against Maria Cherniavska based on her "deactivating her Whatsapp account without informing the plaintiff." *Id.* at 13.

Plaintiff attaches numerous exhibits to his complaint, consisting of color photos depicting a Starbucks logo, various female individuals, excerpts from books or magazines, envelopes listing plaintiff as the return addressee, and a statue of what appears to be Jesus. [DE-1-1 to DE-1-8].

**B. Jurisdiction**

Plaintiff claims that "[p]ursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the District of New Jersey (as an Article III court) has jurisdiction over this matter because there is complete diversity of jurisdiction between the [p]laintiff and the four defendants given that the plaintiff lives in Sarasota, Florida and no longer in Fort Worth, Texas." [DE-1] at 10. Plaintiff additionally asserts that:

> [a]s an Article III court, the U.S. District Court for the District of New Jersey also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, Equal Protection Clause, Due Process Clause, Fourth Amendment, and Privileges and Immunities Clause.

*Id.*

Plaintiff argues that "[t]herefore, a federal question is presented by the implication of the black-letter law of the aforementioned federal statutes in addition to the discussion of Constitutional Law provisions." *Id.* Plaintiff concludes his jurisdictional allegations by stating that "[b]ecause the amount in controversy does not exceeds $75,000 (*i.e.* $0 is less than $75,000), this court does not have jurisdiction based on the amount in controversy." *Id.* at 11-12.

In his civil coversheet, plaintiff appears to allege diversity jurisdiction by checking the diversity box in Section II, Basis for Jurisdiction, and claiming that he was a citizen of another state while defendants were incorporated and had their principal place of business in a different state. *See* Civil Cover Sheet [DE-1-9].

### C. Relief requested

Plaintiff provides that he is not seeking any punitive, compensatory, or treble damages through "joint and several liability," but explains that he is seeking the "equitable remedy of an injunction and/or declaratory judgment." *See* [DE-1] at 15. Specifically, plaintiff seeks a declaratory judgment from the court, "declaring that the comments by Erin Burnett and CNN through vicarious liability and/or doctrine respondent superior are defamatory, libelous, and slanderous towards President Donald J. [T]rump as the plaintiff is a supporter of President Donald J Trump." *Id.* Plaintiff also seeks, pursuant to Rule 65, "a preliminary injunction precluding and/or enjoining CNN or any of its employees from defaming President Donald J. Trump with false, libelous, or slanderous material." *Id.* Plaintiff states that:

> [s]ince the plaintiff is not seeking punitive, compensatory, or treble damages for the commission of the dignitary tort of defamation (libel and/or slander), the plaintiff is also seeking an injunction requiring that CNN apologize for the racist and condescending comments towards Riley Curry as the daughter of Steph and Ayeshia Curry.
>
> If the issue of venue and/or forum non conveniens is relevant, the plaintiff respectfully requests that this case not be transferred to USA District Court of Maryland pursuant to 28 U.S.C. Section 1406 to have this case presided over by the "Abrego Garcia judges" who have been on the wrong side of due process and habeas corpus rights in which USA Supreme Court at One First Street, NE Washington, DC 20543 said that the return of Abrego Garcia must be facilitated by the current administration.

*Id*.

## II. APPLICABLE LEGAL STANDARDS

After allowing a party to proceed *in forma pauperis*, as here, the court must conduct a frivolity review of the case pursuant to 28 U.S.C. § 1915(e)(2)(B). In such a review, the court must determine whether the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from an immune defendant, and is thereby subject to dismissal. 28 U.S.C. § 1915(e)(2)(B); *see also Denton v. Hernandez*, 504 U.S. 25, 27 (1992) (providing standard for frivolity review). A case is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In evaluating frivolity specifically, the court holds a *pro se* plaintiff's pleadings to "less stringent standards" than those drafted by attorneys. *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nonetheless, the court is not required to accept a *pro se* plaintiff's contentions as true. *Denton*, 504 U.S. at 32. The court may "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. Such baseless claims include those that describe "fantastic or delusional scenarios." *Id.* at 328. Provided that a plaintiff's claims are not clearly baseless, the court must weigh the factual

allegations in plaintiff's favor in its frivolity analysis. *Denton*, 504 U.S. at 32. The court must read the complaint carefully to determine if a plaintiff has alleged specific facts sufficient to support the claims asserted. *White*, 886 F.2d at 724.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction . . . [and] a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2). The factual allegations in the complaint must create more than a mere possibility of misconduct. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Likewise, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)) (alterations in original) (internal quotation marks omitted).

A court may also consider subject matter jurisdiction as part of the frivolity review. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure."); *Hill v. Se. Reg'l Med. Ctr.,* No. 7:19-CV-60-BO, 2019 WL 7041893, at *2 (E.D.N.C. Oct. 21, 2019), *mem. & recomm. adopted*, No. 7:19-CV-60-BO, 2019 WL 7163434 (E.D.N.C. Dec. 20, 2019), *aff'd*, 818 F. App'x 261 (4th Cir. 2020) (discussing the lack of federal question jurisdiction and diversity jurisdiction during frivolity review as a basis for dismissal). "Federal courts are courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress." *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968). The presumption is that a federal court lacks jurisdiction in a particular case unless jurisdiction is affirmatively demonstrated. *Lehigh Min. &*

*Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895). The burden of establishing subject matter jurisdiction rests on the party invoking jurisdiction, here the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction . . . is on the plaintiff, the party asserting jurisdiction."). The complaint must affirmatively allege the grounds for jurisdiction. *Bowman*, 388 F.2d at 760. If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

## III. ANALYSIS

Having granted plaintiff's application to proceed *in forma pauperis*, the court must now undertake the frivolity review of this case, pursuant to 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B), a court shall dismiss a case if the action is: "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

### A. Federal question jurisdiction

Plaintiff ostensibly attempts to allege federal question jurisdiction by his references to "Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, Equal Protection Clause, Due Process Clause, Fourth Amendment, and Privileges and Immunities Clause." *See* [DE-1] at 10. Yet plaintiff alleges no facts that could even liberally be construed as stating a claim for relief under any of these statutes or constitutional provisions. *See generally* [DE-1]; *cf. Carter v. City of Raleigh*, No. 5:18-CV-160-D, 2018 WL 3353740, at *7 (E.D.N.C. June 18, 2018) ("[P]laintiff alleges no facts that can be construed to implicate a federal question, irrespective of the litany of federal statutes contained in the complaint."), *report and recommendation adopted*, No. 5:18-CV-160-D, 2018 WL 3352642 (E.D.N.C. July 9, 2018). Indeed, all of plaintiff's listed claims – defamation, invasion of privacy, and intentional infliction

of emotional distress (*see* [DE-1] at 13-14) – sound in state tort law. Accordingly, plaintiff has failed to allege federal question jurisdiction over his complaint.

**B. Diversity jurisdiction**

Plaintiff claims that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, but also claims that the "amount in controversy does not exceeds [sic] $75,000 (i.e. $0 is less than $75,000)." [DE-1] at 10. 28 U.S.C. § 1332(a) provides United States district courts "original jurisdiction of all civil actions where the *matter in controversy exceeds the sum or value of $75,000*, exclusive of interest and costs, *and* is between . . . [c]itizens of different [s]tates." (emphasis added). Accordingly, plaintiff has failed to effectively alleged diversity jurisdiction.

Yet even if the value of plaintiff's injunctive relief satisfied the amount in controversy,[2] plaintiff's claims would still fail for the reasons discussed below.

**C. Failure to state a claim**

**1. Deficient pleading**

Plaintiff does not appear to allege any conduct by President Zelenskyy, the Estate of Alexei Navalny, the UN, the World Bank, the IMF, or the CFR. *See generally* [DE-1]. Accordingly, plaintiff has failed to state a claim against any of these individuals and entities.

Plaintiff alleges that "Maria Cherniavska deactivated her Whatsapp account while the plaintiff was litigating for a fiance visa against [the ICJ]." *Id.* at 2. This reference does not represent a "short and plain statement of the claim showing that the pleader is entitled to relief" with respect to the ICJ. Fed. R. Civ. P. 8(a)(2). Accordingly, plaintiff has failed to state a claim

[2] "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 2443 (1977). When assessing the amount in controversy, the court should use "the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (citing *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002)).

against the ICJ.

The only allegation that plaintiff makes with respect to Kateryna Olokoba and Darya Ignateva is that he communicated with them through various websites and networks. *See* [DE-1] at 11. As plaintiff alleges no viable legal claims arising from these interactions, plaintiff has also failed to state a claim against these individuals. Plaintiff's claims against Erin Burnett and Maria Cherniavska will be discussed below.

**2. Defamation**

In his claim for defamation, plaintiff alleges that Erin Burnett "has defamed both [former President Clinton] and [President Trump] by insinuating that the both of them are on a client list provided by either Jeffrey Epstein or his accomplice Ghislain Maxwell." [DE-1] at 13.

Plaintiff does not have standing to assert a claim for defamation based on an alleged injury to former President Clinton or President Trump. To have standing, plaintiff must first have experienced (i) "an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical,'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (internal citations omitted). Next, "there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Id.* (alterations in original) (citations omitted). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (citations omitted).

Here, plaintiff fails to satisfy the first requirement of standing. Plaintiff has not shown how alleged defamation of former President Clinton and President Trump caused a concrete and particularized injury in fact to plaintiff specifically. As a general rule, a third party has no action

for damages suffered by reason of the defamation of another party. *See Wilson v. Retail Credit Co.*, 325 F. Supp. 460, 463 (S.D. Miss. 1971), *aff'd*, 457 F.2d 1406 (5th Cir. 1972); *see also Wyoming Corp. Servs. v. CNBC, LLC*, 32 F. Supp. 3d 1177, 1186 n. 2 (D. Wyo. 2014) ("WCS has no standing to sue for defamation of a third party."). Another court has noted that even "the defamation of one family member does not normally give rise to a cause of action by another family member." *Wilson*, 325 F. Supp. at 463. Much less here, is there any basis to find that alleged defamation of a politician whom a plaintiff esteems creates in injury-in-fact to the plaintiff. Accordingly, plaintiff's defamation claim fails due to a lack of standing.

**3. Invasion of privacy through false light**

In his claim for invasion of privacy, plaintiff alleges that "Erin Burnett of CNN has committed the tort of the invasion of privacy through false light by insinuating that both [former President Clinton] and [President Trump] are on the client list provided by either Jeffrey Epstein or Ghislain Maxwell." [DE-1] at 14. For the same reasons discussed above, with respect to plaintiff's defamation claims, plaintiff does not have standing to assert an invasion of privacy claim. Plaintiff does not allege that any of the defendants invaded his privacy, and he has failed to allege any injury-in-fact from any alleged invasion of privacy against former President Clinton or President Trump. *Id.* Accordingly, plaintiff's invasion of privacy through false light claim fails due to a lack of standing.

**4. Intentional infliction of emotional distress**

In his claim for IIED, plaintiff alleges that "defendant Erin Burnett of CNN has committed extreme and outrageous conduct by insinuating that both [former President Clinton] and [President Trump] are on this client list provided by either Jeffrey Epstein o[r] Ghislain Maxwell." [DE-1] at 14. Plaintiff claims that "that all supporters of Donald J. Trump are negatively affected in terms

of the media's relentless and nonstop coverage of this defamatory publications [sic] about both Jeffrey Epstein and Ghislain Maxwell." [DE-1] at 14. Plaintiff argues:

> the doctrine of transferred intent would be an appropriate argument to establish that supporters of both [former President Clinton] and [President Trump] would have standing, causation, and redressability to bring a case that they have also been negatively affected by the media's relentless defamation of their hero President Donald. J. Trump.

*Id.* at 15.

Plaintiff also claims that "Maria Cherniavska of Warsaw, Poland has committed the intentional infliction of emotional distress IIED by deactivating her Whatsapp account without informing the plaintiff." [DE-1] at 15.

As plaintiff does not put forward any other state law applicable to the instant dispute, the undersigned will apply North Carolina state law, the substantive law of the forum state. *See ESA, Inc. v. Walton Constr. Co., Inc.*, No.: 7:04-CV-75-F(3), 2007 WL 9718764, at *1 (E.D.N.C. Mar. 16, 2007) ("A federal court sitting in diversity is bound to follow the choice of law rules of the forum state.") (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941)); *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 782 (4th Cir. 2023) ("Where neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.") (quoting *Echo, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995)); *see also Wiener*, 58 F.4th at 781-82 ("Because both parties consented to the choice of North Carolina law to govern this action and AXA waived any argument that another state's law should be applied, the district court erred when it engaged in its own choice-of-law analysis and decided to apply [another state's] law."). A federal court sitting in diversity must predict how the state supreme court of the applicable state would rule on the relevant issue. *See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433

F.3d 365, 369 (4th Cir. 2005); *Warren v. Smithfield Packing Co.*, No. 5:14-CV-71-D, 2014 WL 1691513, at *2 (E.D.N.C. Apr. 29, 2014) ("[S]itting in diversity, this court must predict how the Supreme Court of North Carolina would rule.").

Under North Carolina law, a prima facie case for IIED requires the following elements: "(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another." *Turner v. Thomas*, 369 N.C. 419, 427, 794 S.E.2d 439, 446 (2016) (alteration in original) (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). A claim for IIED can also be present when "a 'defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress.'" *Id.* (quoting *Dickens*, 302 N.C. at 452, 276 S.E.2d at 335). The "high threshold" to demonstrate "extreme and outrageous conduct" requires conduct "which 'exceeds all bounds of decency tolerated by society'. . . and is 'regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (citations omitted). North Carolina courts have held that IIED "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (quoting Restatement (Second) of Torts § 46, Comment h); *see also Cadieu Tree Experts, Inc. v. Wiedner*, 2026 NCBC 35; 2026 NCBC LEXIS 86; 2026 LX 144678 (N.C. Super. Ct. Apr. 15, 2026) ("'Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' will not be found to constitute extreme and outrageous conduct.") (quoting *Sopko v. Stancill*, 2015 NCBC LEXIS 15, at *7-8 (N.C. Super. Ct. Feb. 10, 2025). "The determination of what constitutes extreme and outrageous conduct is a question of law." *Chapman by & Through Chapman v. Byrd*, 124 N.C. App. 13, 20, 475 S.E.2d 734, 739 (1996) (citing *Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 198, 402 S.E.2d 155, 161 (1991)).

Setting aside the question of whether the insinuation that a politician was on a client list provided by either Jeffrey Epstein or Ghislain Maxwell is extreme and outrageous conduct, plaintiff has not alleged any facts indicating that "insinuat[ions]" by Erin Burnett were intended to cause or were made with reckless indifference to the likelihood that they will cause severe emotional distress to plaintiff. The North Carolina Court of Appeals has held that because IIED "is an intentional tort the actor must act with reckless disregard or the intent to cause severe emotional distress to the *victim*." *Briggs v. Rosenthal*, 73 N.C. App. 672, 678, 327 S.E.2d 308, 312 (1985) (emphasis added) (denying a claim for intentional affliction of mental distress where third party family members were distressed because they feel their deceased son was disparaged in defendants' article, but no physical act was committed against the deceased son).

While plaintiff appears to have been offended by Erin Burnett's alleged insinuations, plaintiff has also alleged no facts to suggest that he experienced severe emotional distress as a result of her conduct. *Cf. Chidnese v. Chidnese*, 210 N.C. App. 299, 316, 708 S.E.2d 725, 738 (2011) ("There is no occasion for the law to intervene in every case where some one's feelings are hurt.") (quoting *Briggs v. Rosenthal*, 73 N.C.App. 672, 677, 327 S.E.2d 308, 311 (1985)).

Accordingly, plaintiff has failed to state a claim upon which relief can be granted against Erin Burnett for IIED.

Plaintiff has also brought an IIED claim related to Maria Cherniavska's deactivation of her Whatsapp account without informing the plaintiff. [DE-1] at 15. Plaintiff has alleged no facts to indicate that Maria Cherniavska's conduct was extreme and outrageous. The North Carolina Court of Appeals has held that alleged conduct by a divorced ex-spouse defendant, aimed at preventing all telephone and electronic communication between an ex-spouse plaintiff and his children was in accordance with "proper legal channels in connection with the child custody proceedings" and

was therefore "clearly insufficient to allege the 'extreme and outrageous' conduct required to state a claim for [IIED]." *Roberts v. Huckabee*, 227 N.C. App. 455, 744 S.E.2d 497 (2013) (citing *Watson v. Dixon*, 130 N.C. App. 47, 52, 502 S.E.2d 15, 20 (1998)). Similarly, here, even if Maria Cherniavska was plaintiff's fiancé, her decision not to communicate with plaintiff cannot be considered "conduct "which 'exceeds all bounds of decency tolerated by society'. . . and . . . 'regarded as atrocious, and utterly intolerable in a civilized community.'" *Turner*, 369 N.C. at 427, 794 S.E.2d at 446 (citations omitted). In addition, as in the case of his IIED allegations against Erin Burnett, plaintiff has failed to allege any facts indicating that he experienced severe emotional distress as a result of Maria Cherniavska's actions. Accordingly, plaintiff has failed to state a claim upon which relief can be granted against Maria Cherniavska for IIED.

In sum, none of plaintiff's claims are meritorious, and the undersigned RECOMMENDS that plaintiff's complaint [DE-1] be DISMISSED for lack of jurisdiction, or, alternatively, for failure to state a claim.

**ORDER ON PLAINTIFF'S REMAING MOTIONS [DE-10; DE-13; DE-15]**

Plaintiff has submitted three additional motions for the court's consideration. Specifically, plaintiff submitted (i) a motion to serve process [DE-10], (ii) a motion to supplement record with additional information [DE-13], and (iii) a motion to transfer case to international court [DE-15]. For the reasons set forth below, the court DENIES each of plaintiff's non-dispositive motions [DE-10; DE-13; DE-15], as they are frivolous and without merit.

Plaintiff filed a "motion to serve process on Volodymyr Zelenskyy (President of the Ukraine), Estate of Alexei Navalny, and International Court of Justice of Hague, Netherlands through Hauge conference on private litigation and Office of International Judicial Assistance (OIJA) under the Department of Justice." [DE-10] at 1-2. Ostensibly in support of the motion,

plaintiff provides disjointed and nonsensical statements, similar to those of his complaint (e.g., references to "The Mothman Prophecies," various songs, and connections to the "Salem Witches." In plaintiff's "motion to the supplement record with additional information" [DE-13], plaintiff appears to ask the court for leave to supplement the record with continued incomprehensible statements and allegations. The information plaintiff seeks to provide has no apparent or discernable relation or impact on plaintiff's complaint, and the request is without merit.

In his motion to transfer [DE-15], plaintiff seeks that the court "to transfer the present case to the [ICJ]." [DE-15] at 2. Plaintiff's justification for the request is disjointed and nonsensical, including that he "may file a lawsuit against his cousin Rhonda Emrit Sinondon as a nurse from Fayetteville, North Carolina for the tortious interference with family relations and/or defamation as in libel or slander for informing the plaintiff's family about his litigation against Elon Musk." *Id*. As to plaintiff's "request[] that this court transfer his complaint to the [ICJ,] . . . [t]he court is not a delivery service." Order, *Stevens v. Unknown Name Emps. of the U.S. Postal Serv.*, No. 5:10-CV-451-D, at 2 (E.D.N.C. July 23, 2015), [DE-16].

## IV. CONCLUSION

For the reasons set forth above, the undersigned RECOMMENDS that plaintiff's complaint [DE-1] be DISMISSED WITHOUT PREJUDICE for lack of jurisdiction, or, alternatively, for failure to state a claim.

Pursuant to the authority under 28 U.S.C. § 636(b)(1), the undersigned DENIES the following non-dispositive motions as frivolous and without merit: (i) plaintiff's motion to serve process [DE-10], (ii) plaintiff's motion to supplement record with additional information [DE-13], and (iii) plaintiff's motion to transfer case to international court [DE-15]. Absent such ruling, however, the undersigned would have recommended these non-dispositive motions be DENIED

AS MOOT, consistent with the above recommendation that plaintiff's complaint be dismissed.

IT IS DIRECTED that a copy of this Order and Memorandum and Recommendation be served on plaintiff or, if represented, his counsel. Plaintiff shall have until **September 2, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 19th day of August, 2026.

Brian S. Meyers
United States Magistrate Judge